No. 22-35863

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JAMES FALLS,

Plaintiff-Appellant,

v.

SOULBOUND STUDIOS, LLC,

Defendant-Appellee,

On Appeal from the United States District Court for the
Western District of Washington No. 2:21-cv-00922-JCC
District Judge John C. Coughenour

## APPELLEE'S ANSWERING BRIEF

One Union Square
600 University Street, Suite 2700
Seattle, WA 98101-3143
(206) 467-1816

McNAUL EBEL NAWROT &
HELGREN PLLC

Timothy B. Fitzgerald, WSBA No. 45103
Anna F. Cavnar, WSBA No. 54413

Attorneys for Defendant-Appellee
Soulbound Studios, LLC

## CORPORATE DISCLOSURE STATEMENT UNDER FRAP 26.1

Soulbound Studios, LLC has no parent corporation, nor is there any publicly held corporation owning 10% or more of the company's stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

I. INTRODUCTION .................................................................................................1

II. JURISDICTIONAL STATEMENT ...................................................................3

III. COUNTERSTATEMENT OF THE ISSUES ..................................................3

IV. STATEMENT OF THE CASE ..........................................................................4

    A. SBS Works to Develop CoE .....................................................................4

    B. Falls Purchases In-Game Items for CoE, Subject to the SBS Terms.............................................................................................................5

    C. Falls Pays for His Purchases Through Xsolla's Website and Subsequently Requests a Refund .............................................................7

    D. Falls Initiates Litigation ...........................................................................8

    E. The Proceedings Before the District Court .............................................9

        1. SBS' Motion to Dismiss ...............................................................9

        2. The Report and Recommendation ..............................................10

        3. The District Court Adopts the R&R and Dismisses the Amended Complaint with Prejudice.........................................11

V. SUMMARY OF ARGUMENT.......................................................................13

VI. ARGUMENT.....................................................................................................15

    A. Legal Standard........................................................................................15

    B. The District Court Correctly Applied Washington's Rules of Contractual Interpretation ....................................................................16

ii

1.	The District Court Correctly Concluded the SBS Terms Do Not Incorporate the Xsolla Refund Policy ..........................16

2.	The District Court Correctly Interpreted and Gave Meaning to All Provisions of the SBS Terms ..........................18

C.	The District Court Properly Dismissed Falls' WCPA Claim .............20

1.	The District Court Did Not Abuse its Discretion in Concluding Falls is Judicially Estopped from Arguing that his WCPA Claim Survives Dismissal of His Contract Claim ...................................................................................20

2.	Falls' WCPA Claim is Implausible .........................................22

VII.	CONCLUSION.................................................................................24

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

DECLARATION OF SERVICE

iii

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................... 16, 22, 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................15

*Engquist v. Oregon Dep't of Agric.*,
  478 F.3d 985 (9th Cir. 2007).................................................... 21, 22

*Gagne v. Zodiac Mar. Agencies, Ltd.*,
  274 F. Supp. 2d 1144 (S.D. Cal. 2003) ...........................................21

*Gen. Signal Corp. v. MCI Telecom. Corp.*,
  66 F.3d 1500 (9th Cir. 1995)...........................................................21

*Gray v. Amazon.com, Inc.*,
  F.Supp.3d, 2023 WL 1068513 (W.D. Wash. Jan. 27, 2023) ...............................23

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003)...........................................................21

*Helfand v. Gerson*,
  105 F.3d 530 (9th Cir. 1997)...........................................................20

*Johnson v. State, Oregon Dep't of Hum. Res., Rehab. Div.*,
  141 F.3d 1361 (9th Cir. 1998)...........................................................15

*Lowden v. T-Mobile USA Inc.*,
  378 F. App'x 693 (9th Cir. 2010) ...................................................24

*New Hampshire v. Maine*,
  532 U.S. 742 (2001).......................................................................20

*Russell v. Rolfs*,
  893 F.2d 1033 (9th Cir. 1990)................................................... 20, 21

*Satomi Owners Ass'n v. Satomi, LLC*,
225 P.3d 225 (2009).................................................................... 16, 17

*Silvey v. Numerica Credit Union*,
519 P.3d 920 (Wash. Ct. App. 2022)...................................................24

*Smale v. Cellco P'ship*,
547 F. Supp. 2d 1181 (W.D. Wash. 2008)...........................................24

*Stone v. Travelers Corp.*,
58 F.3d 434 (9th Cir. 1995)...............................................................15

*W. Wash. Corp. of Seventh Day Adventists v. Ferrellgas, Inc.*,
7 P.3d 861 (Wash. Ct. App. 2000) ................................................ 16, 17

*Wagner v. Prof. Engineers in Cal. Gov't*,
354 F.3d 1036 (9th Cir. 2004)...........................................................20

*Wagner v. Wagner*,
621 P.2d 1279 (1980)........................................................................19

## OTHER AUTHORITIES

11 Samuel Williston, The Law of Contracts
(Richard A. Lord ed., 4th ed. 1999).....................................................16

## RULES

Federal Rule of Civil Procedure 12(b)(6)......................................... 3, 4, 15, 23, 24

Federal Rule of Civil Procedure 72(b)(2)..............................................11

v

# I. INTRODUCTION

Appellee Soulbound Studios, LLC ("SBS") is a videogame studio that has been developing Chronicles of Elyria ("CoE")—an expansive, open world, role-playing videogame—since November of 2016. Appellant James Falls alleges he was one of many to have purchased downloadable content (i.e., in-game items) from SBS during the development of CoE, which he eventually expected to use while playing the game. The game remains in development, and because Falls has not yet had an opportunity to use the in-game items he purchased, he brought this putative class action on behalf of himself and those he claims to be similarly situated, demanding that SBS refund money paid for downloadable content within CoE.

Falls' entire case rests on the faulty premise that SBS has an obligation to refund downloadable content purchases. In fact, the parties expressly and repeatedly agreed in the SBS Terms of Use (the "SBS Terms") that SBS would *not* be obligated to refund any downloadable content purchases.

Falls completely ignores these numerous express written disclaimers of refund liability in the SBS Terms and instead bases his breach of contract claim on a non-existent refund obligation he attempts to fashion out of supposedly "implied provisions" that appear nowhere in the parties' agreement. In so doing, Falls asks

1

this Court to write "implied" provisions into a contract that would contradict its written terms. Because that position finds no support in law, logic, or the plain language of the parties' agreement, the district court correctly determined Falls cannot state a plausible claim for breach of contract. This Court should do the same.

The district court also dismissed Falls' claim under Washington's Consumer Protection Act (the "WCPA"), through which he claims to have suffered unspecified harm in connection with an unidentified video allegedly released by SBS on an undisclosed date—one that, according to Falls, purports to show "game play footage" of CoE but does not actually include any such footage.

Taking these vague and unsupported allegations to be true, the district court correctly concluded "the video at issue did not have the capacity to deceive" as a matter of law because, like all purchasers of in-game items from SBS, Falls expressly "acknowledge[d] and agree[d] the Services provided may differ in certain respects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds." ER-10. Under these circumstances—where a customer agreement discloses the very information a customer later claims was concealed—courts in the Ninth Circuit routinely dismiss

2

WCPA claims under Federal Rule of Civil Procedure 12(b)(6). The same result should follow here for the same reason.

Finally, the district court's determination that judicial estoppel provides an independent basis for barring Falls' WCPA claim was not an abuse of discretion. During oral argument on the motion to dismiss, Falls' counsel argued that his non-contract claims are "based upon the idea that there was a refund policy" and that, for that reason, dismissal of the contract claim "would take care of the entire Complaint." ER-57. The district judge appropriately exercised his discretion when he determined that counsel's open-court representation judicially estopped Falls from arguing that his WCPA claim survives dismissal of his contract claim, as any such argument was "not consistent" with the position taken during oral argument. ER-9.

For all of these reasons and others, Falls is unable to establish that the district court's well-reasoned decision should be reversed. This Court should affirm.

## II. JURISDICTIONAL STATEMENT

SBS agrees with Falls' jurisdictional statement.

## III. COUNTERSTATEMENT OF THE ISSUES

1.    Whether the district court properly determined Falls failed to state a

3

plausible claim for breach of contract in light of the clear "no refund" policy set forth in the SBS Terms.

2. Whether the district court properly determined Falls failed to state a plausible claim under the WCPA in light of his express acknowledgement and agreement in the SBS Terms that "the Services provided may differ in certain respects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds."

3. Whether the district court abused its discretion in determining that Falls is judicially estopped from arguing that his WCPA claim survives dismissal of his contract claim in light of his counsel's statement during oral argument that dismissal of his contract claim "would take care of the entire Complaint."

## IV. STATEMENT OF THE CASE

### A. SBS Works to Develop CoE

SBS is a videogame studio that has been developing CoE—an expansive, open world, role-playing videogame—since 2016.[1] ER-196. In connection with the development of CoE, SBS raised funds in two general ways: (1) through

---

[1] The Statement of the Case consists of the facts alleged in the Amended Complaint, which were credited by the district court, consistent with the standard under a Rule 12(b)(6) motion.

Kickstarter, and (2) by selling in-game items related to CoE through its online store.  ER-197–198.

## B.     Falls Purchases In-Game Items for CoE, Subject to the SBS Terms

Around July of 2017, SBS released a "detailed announcement which advised of SBS's timeline, its systems, and its progress regarding CoE development."  ER-197.  SBS included with this July 2017 "update" a purported "video with game play footage," and Falls alleges he "later found out the footage SBS offered as game play footage of CoE was actually cinematics."  *Id.*

Falls claims to have purchased approximately $20,000 of "downloadable content for CoE" through the SBS website.  ER-198.[2]  Falls clicked on a checkbox indicating agreement with the SBS Terms, which he acknowledges constitute a valid and enforceable contract between himself and SBS.  ER-198, -202–203.

The SBS Terms expressly "govern use of and access to any page, site or content available" on the CoE website, and state that "WHEN YOU USE OUR WEBSITE OR OUR SERVICES, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTOOD AND AGREE TO BE BOUND BY THOSE TERMS

---

[2] The Amended Complaint does not specify whether SBS released the "video with game play footage" before or after Falls made his purchases, nor whether (and if so, when) Falls actually watched that video.

AND POLICIES." ER-106.

Section 5 of the SBS Terms discloses that "the Services provided [by SBS] may differ in certain aspects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds." ER-109.

Two separate sections of the SBS Terms—Sections 5 and 7—address the issue of refunds. Section 5 states, in pertinent part, as follows:

> Any funds raised on a third party service (i.e. – Kickstarter, GoFundMe, etc.) shall be governed by the terms of the particular third party service. Any funds raised through such third party service, as well as any funds raised through pre-release sales of Services . . . is a deposit to be used for the production of and the delivery of the Services. . . .

> Any funds so raised shall be earned by [SBS] and are non-refundable. Such funds shall be applied to the direct provision of any Purchase made and/or to the cost or provision of the Services. [SBS] shall use best efforts to deliver Services purchased-pre-release on or before the estimated release date for the Services. However you acknowledge and agree such delivery dates is not a firm promise and may be extended by [SBS]. Any portion of the funds raised for the provision of the Services shall be non-refundable, unless such funds shall be deemed refundable under terms of services of the third-party service through which those funds for the provision of Services were procured and in effect at the time of the provision of those funds. In consideration of [SBS]'s use of best efforts to develop, produce, and deliver the Services utilizing, in part or in whole, the funds raised for the provision of Services, you agree any amounts raised shall be non-refundable regardless of whether or not [SBS] actually delivers the Services. In consideration for the promises by [SBS], you agree you shall irrevocable [sic] waive any claim for refund of any such funds.

ER-108–109 (emphasis added).

6

Section 7 states in its entirety as follows:

> You acknowledge and accept that all purchases of the Services, as well as any purchase of any Goods, Perks, and Attributes, are FINAL. You acknowledge and agree that any applicable fees and other charges, including those paid for licenses to the Services . . . are not refundable, in whole or in part. You acknowledge you will not be refunded, receive money, or otherwise be compensated or credited for unused . . . Services, when an account is closed, whether such closure is voluntary or involuntary.

ER-109.

## C. Falls Pays for His Purchases Through Xsolla's Website and Subsequently Requests a Refund

SBS is the developer of CoE, but as is common in the videogame industry, CoE has a third-party publisher named Xsolla. ER-196. Falls paid for the downloadable content he purchased through Xsolla's website, subject to Xsolla's refund policy, which reads in pertinent part as follows:

> The terms of this Refund policy govern the relationship between you (purchaser of the Software) and one of the companies of the Xsolla group (hereinafter 'Xsolla' or 'us' or 'we') regarding your purchase of the Software.
>
> *     *     *     *
>
> We DO honor requests for the refund upon your request on the following reasons: . . . Pre-orders where no content has been delivered yet.

ER-198–199, -158–159.

7

Apparently unhappy with the pace of CoE's development, Falls later requested, but did not receive, a refund for his in-game purchases. ER-199.

## D. Falls Initiates Litigation

In February of 2021, Falls filed a complaint against both Xsolla and SBS in the Central District of California, alleging breach of contract and related claims against both entities. ER-209–231.

Xsolla successfully moved to compel arbitration under the agreement it entered into with Falls. ER-170, -237. As a result, Falls' claims against Xsolla are now proceeding in arbitration. ER-170. Separately, the court granted SBS' motion to transfer what remained of the case to the Western District of Washington. ER-170, -237. There, Falls filed the Amended Complaint in which he dropped Xsolla as a defendant and alleged four causes of action against SBS—(1) breach of contract, (2) violation of the WCPA, (3) unjust enrichment, and (4) declaratory relief, *see* ER-202–205—all of which are aimed at recovering the same refund he is simultaneously pursuing from Xsolla.[3] Falls asserted these claims on behalf of

---

[3] Because Falls is only appealing dismissal of his contract and WCPA claims, SBS will not discuss the unjust enrichment and declaratory judgment claims here.

8

himself and a putative class of individuals he claims to be similarly situated. ER-199–202.

## E. The Proceedings Before the District Court

Upon transfer of this matter from the Central District of California to the Western District of Washington, the case was assigned to the Hon. John C. Coughenour, who in turn referred the case to a magistrate judge, the Hon. Theresa L. Fricke, for certain pretrial matters. ER-237.

### 1. *SBS' Motion to Dismiss*

SBS filed a motion to dismiss the Amended Complaint on various grounds, including the following that are relevant here:

- First, Falls failed to state a plausible claim for breach of contract because the express language of the SBS Terms expressly forecloses the refund he sought. ER-177–182.

- Second, Falls failed to state a plausible claim under the WCPA because, among other reasons, the SBS Terms expressly disclose that "the Services provided may differ in certain respects from descriptions, screen shots, or game footage shown or described at the time of deposit of such funds." ER-182–187.

The magistrate judge held a hearing on SBS' motion. During oral argument, the magistrate judge expressed skepticism regarding Falls' claim for breach of contract, and asked Falls' counsel, on the record, if dismissal of the contract claim would "mean all of the claims go down." In response, Falls' counsel stated that his

9

client's non-contract claims are "based upon the idea that there was a refund policy," and therefore acknowledged that dismissal of the contract claim "would take care of the entire Complaint":

> THE COURT: Counsel, if the Court were to find that the defendant's contract was clear about a no refund policy, then does that mean all of the claims go down?

> MR. SELIK: I think so. I think so because the deception is based upon the idea that there was a refund policy. The CPA would fall as well. I am thinking through this, Your Honor. Give me a moment. I think the breach of contract for sure. I think the CPA. Declaratory relief, which is asking for the future, yes, I think it would. It would take care of the entire Complaint. As much as I hate to capitulate to that, it would, but I don't think that is the interpretation the Court should take of this.

ER-57.

### 2. *The Report and Recommendation*

The magistrate judge issued a Report and Recommendation (the "R&R"), recommending dismissal of the Amended Complaint with prejudice. ER-34–42. In so doing, the magistrate judge concluded "the SBS contract is clear and unambiguous" and "clearly states that SBS will not provide any refunds; if the terms of use of third-party service entities allow for refunds, users can turn to *those* entities for refunds." ER-41 (emphasis original). The magistrate judge concluded her analysis by stating that Falls' "breach of contract claim fails, as well as his

other claims against SBS given that his other claims are substantially related to the breach of contract claim." *Id*.

> 3. *The District Court Adopts the R&R and Dismisses the Amended Complaint with Prejudice*

Pursuant to Federal Rule of Civil Procedure 72(b)(2), Falls objected to the R&R, but the district judge entered an order overruling those objections, adopting the R&R in its entirety, and granting SBS' motion to dismiss the Amended Complaint with prejudice. ER-4–11 (the "Dismissal Order"). In that well-reasoned Dismissal Order, the district judge clearly articulated the basis for dismissal.

*First*, the district judge observed (1) that "the SBS Terms consistently provide that SBS *does not* allow refunds," (2) that Falls' "argument ignores that his own interpretation would render a *significant portion* of the SBS Terms meaningless," including the numerous express disclaimers of refund liability, (3) that "the provision [Appellant] attempts to hang his case on can be read in harmony with" the rest of the SBS Terms, and (4) that Falls' interpretation of the SBS Terms "would unnecessarily create conflict between otherwise harmonized provisions." ER-8–9 (emphasis original).

For those reasons, the district judge determined the magistrate judge "did not err in her interpretation of *all* of the language contained in the SBS Terms,"

11

adopted her conclusion that the SBS Terms do not entitle Falls to a refund, and dismissed Falls' claim for breach of contract. ER-9 (emphasis original).[4]

*Second*, as to Falls' non-contract claims, the district judge noted the stark contrast between the position Falls took during oral argument before the magistrate judge (i.e., that his non-contract claims are "based upon the idea that there was a refund policy," and that dismissal of the contract claim "would take care of the entire Complaint," ER-57), and the very different position he later took when objecting to the R&R (i.e., that the magistrate judge supposedly "recommended dismissal of [Falls'] statutory and equity claims without any analysis whatsoever," ER-30–31). ER-9. Because those two positions are "not consistent," the district judge determined "Plaintiff is judicially estopped" from arguing that his non-contract claims survive dismissal of his contract claim. ER-9.

The district judge nevertheless went on to analyze the merits of Falls' non-contract claims. ER-9–11. As to the WCPA claim, the district judge determined that, "as a matter of law, the video at issue did not have the capacity to deceive" because, in agreeing to the SBS Terms, Falls expressly "acknowledge[d] and

---

[4] The district judge also agreed with the magistrate judge in rejecting Falls' assertion that the Xsolla refund policy—which is directly inconsistent with Sections 5 and 7 of the SBS Terms—is somehow incorporated into the SBS Terms. ER-7.

12

agree[d] the Services provided may differ in certain aspects from descriptions, screen shots, or gameplay footage shown or described at the time of deposit of such funds." ER-9–10.[5]

## V. SUMMARY OF ARGUMENT

Falls seeks to enforce what he describes in his Amended Complaint as a "written contract (with implied provisions)" between himself and SBS—that is, a contract that supposedly includes "provisions" that even he admits are not written down anywhere in the parties' agreement. *See* ER-202. By anchoring his case to these supposedly "*implied* [refund] provisions," Falls necessarily asks the Court to ignore numerous *express* provisions in the SBS Terms that say exactly the opposite of what he urges the Court to imply. It is telling that he makes no mention of those express disclaimers of refund liability in his Amended Complaint or in his opening brief.

As he did in the proceedings below, Falls once again continues to completely ignore the numerous express disclaimers of refund liability in the SBS Terms, and continues to espouse the existence of a supposedly "implied" refund

---

[5] The district judge also noted that, under the SBS Terms, Falls agreed any services would be made available by SBS "on an 'AS IS' and 'AS AVAILABLE' BASIS,'" and that users "EXPRESSLY AGREE THAT YOUR USE OF THIS SITE IS AT YOUR OWN RISK." ER-10.

13

obligation on the part of SBS—one that he says arises from a single sentence of the SBS Terms read in combination with another sentence he plucked from another agreement he separately entered into with non-party Xsolla (which he claims is somehow binding upon SBS). But ignoring the numerous express disclaimers of refund liability in the SBS Terms does not make them disappear. Those provisions are an integral part of the parties' agreement, and as the district court correctly determined, they must be enforced. The district court correctly rejected the notion that the SBS Terms impliedly give rise to a refund obligation, and correctly concluded the SBS Terms "clearly state[ ] that SBS will *not* provide any refunds[.]" ER-41 (emphasis added). That decision should be affirmed.

Further, as his counsel admitted in open court, Falls' WCPA claim hinges upon the existence of a supposed refund obligation under the SBS Terms—an obligation the district court correctly concluded does not exist, and properly exercised its discretion in determining he was judicially estopped from claiming otherwise. This Court should affirm the district court's dismissal of the Amended Complaint in its entirety.

14

## VI. ARGUMENT

### A.    Legal Standard

When a district court dismisses claims pursuant to Federal Rule of Civil Procedure 12(b)(6), such dismissals are generally subject to *de novo* review. *Stone v. Travelers Corp.*, 58 F.3d 434, 436–37 (9th Cir. 1995). However, to the extent a dismissal results from an application of judicial estoppel, such decisions are reviewed for abuse of discretion. *See*, *e.g.*, *Johnson v. State, Oregon Dep't of Hum. Res., Rehab. Div.*, 141 F.3d 1361, 1364 (9th Cir. 1998) ("Federal law governs the application of judicial estoppel in federal courts. . . . Because a court invokes judicial estoppel at its discretion, we review the application of judicial estoppel to the particular facts of a case for abuse of discretion.") (citations omitted).

In order to overcome a motion to dismiss under Rule 12(b)(6), a claim must include sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims have facial plausibility if a party pleads factual content that "allows the court to draw the reasonable inference that [the opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.** **The District Court Correctly Applied Washington's Rules of Contractual Interpretation**

      1.    *The District Court Correctly Concluded the SBS Terms Do Not Incorporate the Xsolla Refund Policy*

The district court correctly concluded the SBS Terms do not incorporate the Xsolla refund policy. ER-6–7, -40–41. External documents, such as the Xsolla refund policy, may be incorporated into an agreement only where the parties "clearly and unequivocally incorporate" them by reference, *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 225 (2009), and then only where it is "clear that the parties to the agreement had knowledge of and assented to the incorporated terms," *W. Wash. Corp. of Seventh Day Adventists v. Ferrellgas, Inc.*, 7 P.3d 861, 865 (Wash. Ct. App. 2000) (quoting 11 Samuel Williston, The Law of Contracts § 30:25, at 234 (Richard A. Lord ed., 4th ed. 1999)).

Falls contends that *his* assent to Xsolla's terms, in combination with the language he cites without any surrounding context from Section 5 of the SBS Terms, makes it reasonable to conclude *SBS* somehow intended to incorporate Xsolla's refund policy into its own Terms. This, in turn, purportedly allows Falls to enforce *Xsolla's* refund policy against *SBS* (while he simultaneously seeks to enforce Xsolla's refund policy against Xsolla in a separate arbitration proceeding). *See* Op. Br. at 6-7; *accord* ER-29.

16

But as the district court correctly recognized, that strained and convoluted argument cannot be squared with Washington law, which requires *both* parties to "clearly and unequivocally" incorporate documents by reference before the terms of such documents can be enforced. ER-7, -40 (citing *Satomi*, 167 Wn.2d at 802 and *Ferrellgas*, 7 P.3d at 865). Further, it must also be clear that *both* parties "had knowledge of and assented to the incorporated terms." ER-7, -40.

Here, there is no basis to conclude SBS "clearly and unequivocally" incorporated into the SBS Terms the separate (and directly inconsistent) terms contained in Falls' separate contract with Xsolla, or that SBS had knowledge of and assented to those separate terms. To the contrary, and as noted, numerous express provisions of the SBS Terms—most conspicuously, Sections 5 and 7— expressly state that SBS is not liable for refunds. Those provisions contradict the assertion that SBS somehow implicitly agreed to be responsible for honoring Xsolla's refund policy. As the district court correctly recognized, such an allegation is implausible on its face.

17

2. *The District Court Correctly Interpreted and Gave Meaning to All Provisions of the SBS Terms*

Falls next argues that the Court should read a single phrase from the SBS Terms—that services "shall be non-refundable, unless such funds shall be deemed refundable under the terms of the third party service"—as an "express exception" to SBS' "general policy of not providing refunds," and claims the court below erred in failing to do so. Op. Br. at 6-7. Any other interpretation, Falls maintains, would render the foregoing language "meaningless." *Id*. But as the district court correctly determined, it is Falls who has continuously failed to explain how *his* strained interpretation of the SBS Terms (predicated upon supposedly "implied provisions" he seeks to import from a separate agreement he entered into with a different party) can be squared with the plain, numerous, and express refund disclaimers contained throughout that document. ER-7–9.

As the magistrate judge succinctly explained in the R&R, and as the district judge agreed in adopting the R&R, the language on which Falls relies means exactly what it unambiguously says: "[I]f the terms of use of third-party service entities allow for refunds, users can turn to *those* entities for refunds." ER-41, -8–9 (emphasis original). Indeed, consistent with that meaningful language, Falls is

18

separately pursuing a refund claim against Xsolla in arbitration, ER-8,[6] just as the SBS Terms expressly contemplated he might be able to do in the event a third-party (in this case, Xsolla) were to offer refunds. Just as Washington law requires, the district court's interpretation of the SBS Terms gives meaning to *all* of its provisions, including the one on which Falls relies. *Wagner v. Wagner*, 621 P.2d 1279, 1283 (1980) (courts are to give effect to "all" provisions of a writing and should not favor an interpretation that "renders some of the language meaningless or ineffective").

Falls, by contrast, asks the Court to interpret the SBS Terms in a way that would simply ignore (i.e., render meaningless) the numerous express disclaimers of refund liability by SBS to which he agreed. Recognizing that these provisions are dispositive, the court below correctly rejected Falls' position. This Court should do so as well.

---

[6] Notably, Falls is seeking to recover the exact same refund twice—once from Xsolla through arbitration, and again from SBS through this lawsuit.

19

## C. The District Court Properly Dismissed Falls' WCPA Claim

### 1. *The District Court Did Not Abuse its Discretion in Concluding Falls is Judicially Estopped from Arguing that his WCPA Claim Survives Dismissal of His Contract Claim*

Given counsel's representation during oral argument that Falls' WCPA claim is "based upon the idea that there was a refund policy," and that dismissal of the contract claim "would take care of the entire Complaint," the district court correctly determined that Falls is judicially estopped from arguing that his WCPA claim survives dismissal of the contract claim. ER-9.

District courts may apply the doctrine of judicial estoppel in their discretion, *see New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), and the district court was well within its discretion when applying it here. Indeed, judicial estoppel is intended to promote "the orderly administration of justice and regard for the dignity of judicial proceedings" by preventing a litigant from "playing fast and loose with the courts." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citations omitted).

"Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion," *Wagner v. Prof. Engineers in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004) (citing *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997)), and "the doctrine's purpose is to

20

protect the courts' integrity, not necessarily the parties' interests." *Gagne v. Zodiac Mar. Agencies, Ltd.*, 274 F. Supp. 2d 1144, 1148 (S.D. Cal. 2003) (citing *Russell*, 893 F.2d at 1037).

While courts may apply judicial estoppel to prevent a party "from taking inconsistent positions when those inconsistencies have an adverse effect on the judicial process," *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1000 (9th Cir. 2007) (citations omitted), "a party can be estopped even if the previous tribunal did not rely upon the first position, if the party is now playing 'fast and loose' with the court." *Gagne*, 274 F. Supp. 2d at 1148 (citing *Gen. Signal Corp. v. MCI Telecom. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995)). Statements made by an attorney before a court can be imputed to a party and are subject to judicial estoppel. *See Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (citing cases).

Applying those principles here, the district court acted well within its discretion by rejecting the "not consistent" position Falls took when objecting to the magistrate judge's treatment of his non-contractual claims, and instead held Falls to the statements his counsel made in open court in response to the magistrate judge's very pointed question regarding the relationship between his contractual and non-contractual claims. ER-9.

21

Indeed, litigants should not be allowed to turn the R&R process into a game of "red light, green light" by taking clearly inconsistent positions before magistrate and district court judges. If tolerated, such tactics would have a plainly "adverse effect on the judicial process," *Engquist*, 478 F.3d at 1000, and present exactly the kind of situation in which a district court may invoke judicial estoppel. The district court's dismissal of Falls' WCPA claim on judicial estoppel grounds here was not an abuse of discretion and should be affirmed.

2.      *Falls' WCPA Claim is Implausible*

Even if this Court were to reject the district court's application of judicial estoppel, the district court separately concluded that Falls failed to state a plausible claim for relief under the WCPA because the SBS Terms disclose the very information he claims SBS concealed. ER-9–10. Falls does not dispute the district court's determination that, in light of the disclosures in the SBS Terms, the video referenced in his Amended Complaint "did not have the capacity to deceive." Instead, he attacks the district court's ruling on procedural grounds, assigning error to the district court for supposedly converting SBS' motion to dismiss into a motion for summary judgment and then making "findings of fact." Op. Br. at 8.

But the district court did no such thing. In analyzing the plausibility of Falls' various claims, as required under applicable law, *Iqbal*, 556 U.S. at 678, the

22

district court properly considered not only the allegations in the Amended Complaint itself, but also the SBS Terms that Falls admits are incorporated by reference into the Amended Complaint. *See* ER-58. And, as the district court properly concluded as a matter of law, the SBS Terms disclose the very information Falls claims SBS concealed, thereby rendering implausible his claims to the contrary. ER-10.

In so ruling, the district court did not apply "the wrong 12(b)(6) standard" or convert the "motion to dismiss into a summary judgment motion," Op. Br. at 7–8, but instead assessed the plausibility of Falls' claims, as a matter of law, based upon all of the information properly before it. That is exactly what the applicable legal standard requires. *Iqbal*, 556 U.S. at 678.

Under such circumstances—where a customer agreement discloses the very information a customer later claims to have been concealed—courts in this circuit routinely dismiss WCPA claims under Rule 12(b)(6). *See, e.g., Gray v. Amazon.com, Inc.*, -- F.Supp.3d --, 2023 WL 1068513, at *7 (W.D. Wash. Jan. 27, 2023) (Rule 12(b)(6) dismissal of WCPA claims arising from Amazon's use of voice data collected through Alexa where the applicable policies' disclosures "do not conceal Amazon's use of Alexa-captured voice data for advertising purposes, but instead contemplate that very practice"); *Smale v. Cellco P'ship*, 547 F. Supp.

23

2d 1181, 1188 (W.D. Wash. 2008) (Rule 12(b)(6) dismissal of WCPA claims where "there is no dispute regarding the content of Verizon's disclosures" and those disclosures adequately flagged the possibility that Verizon would assess the allegedly undisclosed fees). *See also Lowden v. T-Mobile USA Inc.*, 378 F. App'x 693, 695 (9th Cir. 2010) (unpublished) (affirming Rule 12(b)(6) dismissal of putative WCPA class action arising from T-Mobile's practice of charging customers certain regulatory fees where T-Mobile's customer agreements adequately disclosed that it would pass along the regulatory fees in question to consumers); *accord Silvey v. Numerica Credit Union*, 519 P.3d 920, 931 (Wash. Ct. App. 2022) (affirming dismissal of putative WCPA class action arising out of credit union's practice of assessing overdraft fees where credit union's fee schedule referenced the process for assessing such fees). The same result follows here for the same reason.

## VII. CONCLUSION

For all the above-stated reasons, this Court should uphold the district court's order dismissing the Amended Complaint.

24

DATED this 2nd day of June, 2023.

McNAUL EBEL NAWROT & HELGREN PLLC

By  s/Timothy B. Fitzgerald
     Timothy B. Fitzgerald, WSBA No. 45103
     Anna F. Cavnar, WSBA No. 54413

600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax: (206) 624-5128
tfitzgerald@mcnaul.com
acavnar@mcnaul.com

Attorneys for Defendant-Appellee
Soulbound Studios, LLC

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Certificate of Compliance for Briefs**

**9th Cir. Case Number 22-35863**

I am the attorney.

**This brief contains 5,134 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

DATED this 2nd day of June, 2022.

McNAUL EBEL NAWROT & HELGREN PLLC

By   s/Timothy B. Fitzgerald
      Timothy B. Fitzgerald, WSBA No. 45103
      Anna F. Cavnar, WSBA No. 54413

600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax: (206) 624-5128
tfitzgerald@mcnaul.com
acavnar@mcnaul.com

Attorneys for Defendant-Appellee
Soulbound Studios, LLC

26

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

**9th Cir. Case Number 22-35863**

The undersigned attorney states the following:

[X] I am unaware of any related cases currently pending in this court.

DATED this 2nd day of June, 2022.

McNAUL EBEL NAWROT & HELGREN PLLC

By   s/Timothy B. Fitzgerald
        Timothy B. Fitzgerald, WSBA No. 45103
        Anna F. Cavnar, WSBA No. 54413

600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-1816
Fax: (206) 624-5128
tfitzgerald@mcnaul.com
acavnar@mcnaul.com

Attorneys for Defendant-Appellee
Soulbound Studios, LLC

27

## DECLARATION OF SERVICE

I hereby certify that on June 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notification.

DATED: this 2nd day of June, 2023, at Seattle, Washington.

By  s/Timothy B. Fitzgerald
　　　　Timothy B. Fitzgerald, WSBA No. 45103
　　　　Anna F. Cavnar, WSBA No. 54413